UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
The Estate of LANA KEENAN,
PADRAIG KEENAN, SARA KEENEN,
PIERCE KEENAN, a minor child, and
DAMIEN KEENAN, a minor child,

        Plaintiffs,
        -v-

DR. JAMIE HOFFMAN-ROSENFELD, *et al.*,

        Defendants.
-------------------------------------------------------X
FEUERSTEIN, S., Senior District Judge:

**FILED**
**CLERK**

7/29/2019 4:55 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

Case No. 16-cv-0149 (SFJ)(AYS)
**Memorandum and Order**
(re: County Defendants)

I.   <u>Introduction</u>

    Plaintiffs the Estate of Lana Keenan ("Lana"), Padraig Keenan ("Padraig" or "Father"), Sara

Keenan ("Sara" or "Mother"; together with Padraig or Father, the "Parents"), Pierce Keenan

("Pierce"), and Damien Keenan ("Damien"; together with Pierce, the "Brothers"; collectively,

with Lana and the Parents, the "Plaintiffs") commenced this action against Defendants the

County of Suffolk (the "County"), Dennis Nowak as the Director of Suffolk County Child

Protective Services ("Nowak"), John O'Neill as the Chief Executive of the Suffolk County

Department of Social Services ("O'Neill"), Child Protective Services of Suffolk County

("CPS"),[1] the Suffolk County Department of Social Services ("DSS"),[2] the Suffolk County

---

[1] CPS is a unit of the Suffolk County Department of Social Services ("DSS"), one of New York State's Local Departments of Social Services. *See, e.g.*, https://www.suffolkcountyny.gov/Departments/Social-Services. Neither CPS nor DSS is a suable entity as each is "a municipal department that does not have a legal identity apart from the municipality that created it." *Teitelbaum v. Katz*, No. 12-cv-2858, 2013 WL 563371, at *5 (S.D.N.Y. Feb. 11, 2013)(dismissing claims against CPS and DSS because they "are not suable entities")(further citations omitted).

[2] *See supra* note 1.

Attorney's Office[3] (the "County AO"), CPS worker Colleen Pidel ("Pidel"), CPS worker Edward Encarnacion ("Encarnacion"), and CPS worker Maureen Peterson ("Peterson") (hereafter, collectively, the "County Defendants"[4]), among other defendants, alleging, *inter alia*, various civil rights claims pursuant to 42 U.S.C. § 1983. (*See generally* Complaint (ECF No. 1); Amended Complaint (ECF No. 108).) Presently before the Court is the County Defendants' motion seeking summary judgment in their favor on all of Plaintiffs' claims (hereafter, the "Summary Judgment Motion") (*see* ECF No. 142; *see also* Mem. of Law in Supp. of Mot. Summ. J. (ECF No. 142-16) (hereafter, "Support Memo")), which Plaintiff opposes (hereafter, "Opposition" or "Opp'n") (*see* ECF Nos. 143, 143-1 (Mem. In Opp'n)). For the reasons that follow, Defendants' Summary Judgment Motion is GRANTED.

---

[3] "Although the Suffolk County Attorney's Office is named as a defendant, there are no allegations against the office in the complaint [or the Amended Complaint]. However, the Suffolk County Attorney's Office represents County defendants in this matter." (Support Memo at 1 n.1.) In any event, "in the case of the Suffolk County District Attorney's Office, [it i]s not an entity capable of being sued." *Barreto v. County of Suffolk*, 455 F. App'x 74, 76 (2d Cir. 2012); *Powell v. State of N.Y.*, No. 15-cv-3733, 2015 WL 7756108, at *2 (E.D.N.Y. Nov. 30, 2015) ("The District Attorney's Office is a non-suable entity lacking any distinct legal existence distinct from the District Attorney.")(collecting cases).

[4] The caption of the March 27, 2017 Amended Complaint also includes the name of CPS worker Joy DeCordova (*see* ECF No. 108), who was not named in the original Complaint. (*Cf.*, ECF No. 1.) (*See infra* at note 15 for further discussion.)

II.    Background

    *A. Factual Background*

        1. Generally and for Context[5]

This case emanates "out of the tragic and untimely death" of Lana, the three-month old

daughter of the Parents and sister to the Brothers.  (Support Memo at 1.)

> Lana was hospitalized on January 3, 2014 and passed away on
> February 6, 2014 at defendant Cohen Children's Medical Center.
> According to the [C]omplaint, while Lana was hospitalized,
> defendant Dr. Jamie Hoffman-Rosenfeld ("Dr Hoffman-
> Rosenfeld") made an intentionally false report to defendant [CPS]
> to the effect that Lana had been abused and/or neglected by [her
> P]arents.  Plaintiffs aver that "[b]ased upon defendant [Dr.]
> Hoffman-Rosenfeld's intentionally false and knowingly
> misleading statements, Family Court proceedings were launched
> and continued against [the Parents]" by [CPS] workers, defendants
> Pidel, Encarnacion and Peterson . . .

(Support Memo at 1-2 (citing Complaint, ¶¶30, 31, 33, 120).)  "Plaintiffs do not claim to have

been criminally prosecuted.  The so called 'prosecution' to which they refer is the Family Court

proceeding allegedly fomented by Dr. Hoffman-Rosenfeld."  (*Id.* at 2, note 3.)

---

[5]  This subsection is taken from the County Defendants' Support Memo which relies upon the
Plaintiffs' original Complaint.  In their Local Rule 56.1 Statement, the County Defendants do not
provide any facts regarding these allegations.  (*See* County's Rule 56.1 Statement (ECF No. 142-
1), *in toto*.)  Plaintiffs' Local Rule 56.1 Statement does include some of these facts, albeit
without any citation to the record.  (*See* ECF No. 145-3 at (unnumbered) ¶¶3, 11, 14.)  For
purposes of the present Summary Judgment Motion only, these alleged facts are presented as
contextual background and are deemed to be not in dispute.

## 2. <u>Relevant Background Regarding the County Defendants</u>[6]

More specifically, on January 9, 2014, CPS sought the temporary removal of Lana, Pierce and Damien from their Parents; to that end, CPS worker Peterson signed and filed applications for pre-Petition temporary removal of the children (hereafter, the "Pre-Petitions"). (*See* County's 56.1 Statement, ¶¶1, 3; *cf.*, Plaintiffs' 56.1 Statement, (unnumbered[7]) ¶12.)  The Parents, each represented by counsel, appeared in Family Court in response to the Pre-Petitions. (*See id.* at ¶4.)  Upon advice of counsel, Sara consented to giving temporary custody of Pierce and Damien to her parents pending the commencement of Child Protective Petitions and a hearing thereupon.  (*See id.* at ¶5.)

On January 13, 2014, another CPS worker, Joy DeCordova, signed Child Protective Petitions on behalf of the Lana and the Brothers alleging child abuse and negligence by the Parents, with the child abuse of Lana alleged to be severe (hereafter, the "Petitions").  (*See id.* at ¶6; *cf.*, Plaintiffs' 56.1 Statement, (unnumbered) ¶13 ; *cf.*, Plaintiffs' 56.1 Statement, [13] ("On January 13, 2014, a petition alleging abuse was filed in Family Court alleging that Lana sustained widespread bleeding in her brain , spinal cord injury, and injuries to her neck ligaments

---

[6]  Unless otherwise indicated, the facts are taken from the County Defendants' Local Rule 56. 1 Statement (hereafter, the "County's 56.1 Statement")(*see* ECF No. 142-1), and Plaintiffs' Local Rule 56.1 Statement (hereafter, "Plaintiffs' 56.1 Statement")(*see* ECF No. 145-3).  Unless otherwise stated, a standalone citation to a Rule 56.1 Statement denotes that either the parties have, or the Court has, determined the underlying factual allegation to be undisputed.  Citation to a party's Rule 56.1 Statement incorporates by reference the documents cited therein, if any.

[7]  Local Rule 56.1(b) requires "a corresponding numbered paragraph responding to each numbered paragraph in the statement of the moving party;" however, Plaintiffs' have submitted 16 unnumbered, non-corresponding, and predominantly unresponsive paragraphs.  (*See* Plaintiffs' 56.1 Statement, *in toto*.)  Further, Plaintiffs have failed to comply with Local Rule 56.1(d), which provides: "Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, *must* be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  (Emphasis added).  (*See also infra*, Part III(A)(2).)

and further, that the injuries are those as seen when shaking an infant.").) The filing of the Petitions with Family Court commenced protective proceedings against the Parents (hereafter, "Protective Proceedings"). (*See id.* at ¶8.) On January 14, 2014, "Family Court entered an Order Directing Temporary Removal of Child[ren,] continuing Pierce . . . and Damien . . . in the custody of Sara's parents. Because Lana was hospitalized at that time, she was place in the custody of the Suffolk County Commissioner of Social Services." (*Id.* at ¶9 (internal citation omitted).) A January 31, 2014 Family Court order was issued continuing this custodial arrangement. (*See id.* at ¶10.) On August 7, 2014, the Family Court issued an "Order On Application For Return of Child[ren] Temporarily Removed From Home" pursuant to which Pierce and Damien were permitted to be returned to Father, but prohibiting Mother from returning to the family home. (*See id.* at ¶11.)

Thereafter, on November 6, 2014 and as part of the Protective Proceedings, the Family Court conducted a trial on the Petitions (*see* Amended Complaint, ¶171); it issued its Decision and Order on January 16, 2015, (hereafter, "Family Court Order")(*see* Ex. J, attached to County's 56.1 Statement). "Based on all the credible evidence produced at trial," the Family Court judge found the County had failed "to establish by a preponderance of the evidence" that Lana was an abused, severely abused or neglected child" or that the Brothers were "derivatively abused or neglected." (Ex. J at 25-26; *see also* County's 56.1 Statement, ¶12; *cf.*, Plaintiffs' 56.1 Statement, (unnumbered) ¶16.)

Sometime thereafter and pursuant to N.Y. General Municipal Law § 50-e, Plaintiffs filed Notices of Claim with the County. (*See* County's 56.1 Statement, ¶13.) Receipt of those Claims prompted the County to issue two Notices of Municipal Hearings pursuant to N.Y. General Municipal Law § 50-h, directing the Parents to each appear for a hearing on August 6, 2015.

(*See id.* at ¶¶13-14.)  At the Parents' request, the August 6, 2015 § 50-h hearings were adjourned to October 8, 2015.  (*See id.* at ¶16.)  Despite clear and conspicuous notice that it was a claimant's responsibility to confirm attendance at a § 50-h hearing and to reschedule an unconfirmed hearing date (*see id.* at ¶15), neither of the Parents "appeared at their § 50-h hearing on the adjourn date of October 8, 2015.  Nor did they or their counsel [*sic*] office request an adjournment."  (*Id.* at ¶17; *see also id.* at ¶18 ("At no time after October 8, 2015 did Sara or Padraig ever appear for the [*sic*] their hearings, nor was any attempt made by them or on their behalf to reschedule the hearings.").)

    *B.  Procedural History*

Plaintiffs commenced this action on January 12, 2016 by filing their original Complaint (*see* ECF No. 1); the case was originally assigned to District Judge Wexler (*see* ECF No. 1-1.)  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the County Defendants moved to dismiss the case (*see* ECF No. 35); they also moved for a stay of discovery (*see* ECF No. 39; *see also* ECF No. 59), which motion was denied.  (*See* June 2, 2016 Minute Entry (ECF No. 53).)  As various discovery disputes were being brought before the Court, Plaintiffs moved to amend their Complaint (*see* ECF No. 83), which the County Defendants opposed (*see* ECF No. 89).  While the County Defendants' dismissal motion and Plaintiffs' amendment motion were pending, Judge Wexler recused himself from the case, which was randomly reassigned to the undersigned.  (*See* Case Docket, Dec. 13, 2016 ELECTRONIC ORDER OF RECUSAL).  Thereafter, this Court scheduled a December 19, 2016 Status Conference.  (*See* Case Docket, Dec. 14, 2016 NOTICE of Hearing).

At the December 19th Status Conference, among other things, this Court terminated all pending dismissal motions with leave to refile as summary judgment motions upon close of

discovery; a September 11, 2017 discovery deadline was set. (*See* Case Docket, Dec. 19, 2017 Minute Order (ECF No. 96).) Thereafter, on March 14, 2017, the Magistrate Judge entered an order granting Plaintiffs' motion to amend their complaint and directing Plaintiffs' counsel "to serve and file the amended complaint forthwith." (Case Docket, Mar. 14, 2017 ELECTRONIC ORDER (AYS).) On March 27, 2018, Plaintiffs filed their Amended Complaint (*see* ECF No. 108) raising numerous claims, *to wit*:

> 1. pursuant to § 1983, the malicious prosecution of Parents by the CPS workers for their purported commencement and continuance of the Protective Proceedings (*see* Count 1);
> 2. pursuant to § 1983, in the absence of probable cause, the abuse of process by CPS and DSS workers for their continuance of the Protective Proceedings (*see* Count 2);
> 3. pursuant to § 1983, a conspiracy to permit and condone the use of false and misleading testimony against the Parents during the Protective Proceedings, the use of which interfered with the Plaintiffs' constitutional rights, *i.e.*, freedom of association and the fundamental rights inherent in the familial relationship (*see* Count 3);
> 4. pursuant to § 1983, the intentional violation of Plaintiffs' constitutional rights to familial association rights because of Lana's and the Brothers' removal from their parents' custody (*see* Count 4);
> 5. pursuant to § 1983, a *Monell* claim based on the alleged adopted custom and practice of CPS and DSS of having private citizens perform their investigative work, upon which CPS and DSS rely, and which resulted in constitutional injury (*see* Count 5); and
> 6. pendent state law claims for false imprisonment, loss of companionship/consortium, intentional infliction of emotional distress, abuse of process, malicious prosecution, and defamation (*see* Counts 6, 11-15).

On April 10, 2017, the County Defendants answered the Amended Complaint denying the majority of Plaintiffs' allegations and raising various affirmative defenses. (*See* ECF No. 110.)

On February 1, 2018, the County Defendants moved for summary judgment in their favor as to all the claims raised by Plaintiffs. (*See* Support Memo at 4, 22.)

### C. *The Parties' Positions*

#### 1. The Defendants' Position

County Defendants argue that Plaintiffs cannot recover on any of their claims against them:

> The parents cannot establish their § 1983 claim for malicious prosecution since they were not criminally prosecuted, arrested or detained. In particular, they cannot establish their § 1983 malicious prosecution claim against the CPS workers because the CPS workers did not initiate the . . . [P]rotective [P]roceedings. Moreover, the CPS workers are absolutely immune from liability on § 1983 malicious prosecution and abuse of process claims. Alternatively and additionally, the doctrine of qualified immunity protects the CPS workers from plaintiffs' § 1983 claim of malicious prosecution. Plaintiffs have no § 1983 claim for interference with their right to familial association because the children were removed from the parents' custody initially with the parents' consent and thereafter pursuant to orders of the Family Court. Since plaintiffs do no allege a cognizable violation of a constitutional right, they articulate no § 1983 conspiracy or *Monell* claim. Furthermore, plaintiffs have no evidence that a County custom or policy caused a violation of their civil rights. Last, plaintiffs may not proceed upon their pendent claims because they failed to appear for a hearing as required by N.Y. General Municipal Law § 50-h prior to bringing this action.

(Support Memo at 4-5 (citation omitted).)

#### 2. The Plaintiffs' Position

The bases for Plaintiffs' Opposition is that the CPS workers were, in essence, lazy and incompetent, relinquishing their investigative duties upon others, especially Defendant Hoffman-Rosenfeld, a doctor and supposed child abuse specialist, who believed Lana suffered severe child abuse. (*See* Opp'n at 2-4.) Plaintiffs contend that Hoffman-Rosenfeld continued to push her theory of severe child abuse after the Parents did not provide her with a satisfactory explanation

for Lana's injuries even after police interviewed the Parents, but found no criminal activity.  (*See id.* at 7, 13, 20.)  Relying upon Hoffman-Rosenfeld's alleged unsubstantiated theory, Plaintiffs contend CPS nonetheless knowingly and recklessly relied on false information in pursuing pre-Petition removal of Lana and her Brothers from their Parents and then pressing for continued separation of the children from their Parents by commencement of the Protective Proceedings. (*See* Opp'n at 9-10; *see also id.* at 22.)

Opposing the County Defendants' malicious prosecution claim, Plaintiffs assert that custodial confinement is not a prerequisite to a Fourth Amendment violation, claiming "[a]ll that is necessary is a violation or the impairment of an individual's Fourth Amendment rights which, in this case, means unwarranted restraint and interference with the parent/child relationship." (Opp'n at 10 (citing *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999); *see also id.* at 23-24.)  Apparently in opposition to the County Defendants' abuse-of-process argument, Plaintiffs state that "[a]s the result of the '*perversion of proper legal procedures*' (i.e. false and misleading petitions), the children also had their liberties unlawfully curtailed when their constitutionally protected right to be with their parents so as to comfort and support each other was taken away as the product of a perverse and corrupt investigation and equally corrupt prosecution."  (*Id.* at 12 ("[G]iven that the children were parties to the underlying Family Court investigation and proceeding, they too have claims arising out of 42 U.S.C. § 1983.")(emphasis in original).)

Plaintiffs then posit that "[g]*iven the facts alleged in the Complaint* and opposing counsel's failure to challenge them, there is no level of immunity cloaking the County Defendants." (*Id.* (emphasis added).)  Among other things, they would fault the County Defendants for their reliance on *Emerson v. City of New York*, 740 F. Supp.2d 385 (S.D.N.Y. 2010), arguing *Emerson* held that only attorneys pursuing protective child litigation "may be

afforded absolute immunity as quasi-prosecutors," and that since the CPS workers are not lawyers or quasi-prosecutors, they are not entitled to that same protection. (*Id.* at 13.) Instead, Plaintiffs invite this Court to rely upon *Anilao v. Spota*, 774 F. Supp.2d 457 (E.D.N.Y. 2011), in rejecting the County Defendants' claims for immunity. (*See id.* at 14.)

In support of their *Monell* claim, the Plaintiffs argue that having doctors "literally take charge of a CPS investigation and control it to the extent" that Protective Proceedings are initiated "based solely on the information supplied by the doctors" and "without any independent verification by CPS caseworkers", *i.e.*, "without probable cause", is a custom and practice of the County that leads to severe constitutional injury. (*See* Opp'n at 25 ("[T]his scenario is repeated all too often in Suffolk County.").) Finally, the Plaintiffs do not address the County Defendants' arguments regarding Plaintiffs' pendent state law claims.

III.  Discussion

  A.  *Applicable Law*

    1.  Motion for Summary Judgment Standard

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); *accord Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); *see also Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) ("On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts."

(emphasis added; internal quotations and citation omitted)).  On a motion for summary judgment, "[a] fact is material if it 'might affect the outcome of the suit under the governing law[.]'"  *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the non-moving party," *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (quotations, alterations and citation omitted), and "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019) (quotations and citation omitted); *see also Hancock v. County of Rensselaer*, 882 F.3d 58, 64 (2d Cir. 2018) ("In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party.")  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017) (quoting *Anderson*, 477 U.S. at 248); *accord Nick's Garage, Inc. v. Progressive Casualty Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *accord Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (quotations, brackets and citation omitted); *accord Jaffer*, 887 F.3d at 114.  "[W]hen

the moving party has carried its burden[,] . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [,]" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec.*, 475 U.S. at 586-87), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted). The nonmoving party can only defeat summary judgment by "adduc[ing] evidence on which the jury could reasonably find for that party." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012) (quotations, brackets and citation omitted). "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient' to defeat a summary judgment motion[,]" *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252), and "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); *see also Federal Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (quoting *Fletcher v. Alex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995))); *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) ("While we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party, . . . conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment[.]" (quotations, alterations and citations omitted)); *Elliott v. Gouverneur Tribune Press, Inc.*, No. 13-cv-0055, 2014 WL 12598275, at *2 (N.D.N.Y. Sept. 29, 2014) ("[I]t is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings." (citing *Celotex Corp., v. Catrett*, 477 U.S. 317, 324 (1986); further citation omitted)). Since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party[,] . . . [i]f the

evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (quotations and citations omitted).

Summary judgment is warranted, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *accord El-Nahal v. Yassky*, 835 F.3d 248, 252 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2187 (2017); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) ("[W]here the nonmoving party will bear the burden of proof on an issue at trial, the moving party may satisfy its burden [of showing the absence of a genuine dispute as to any material fact] by pointing to an absence of evidence to support an essential element of the nonmoving party's case[.]" (quotations, alterations and citation omitted)). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23; *accord Crawford*, 758 F.3d at 486; *see also Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) ("Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment."). "The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323 (quotations and citation omitted). Accordingly, when "the burden of persuasion at trial would be on the non-moving party . . . the party moving for summary judgment may satisfy his burden of production under Rule 56 in either of two ways: (1) by submitting evidence that negates an essential element of the

non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage*, 875 F.3d at 114 (quotations and citation omitted); *see also DeRogatis v. Bd. of Trs. of Welfare Fund of Int'l Union of Operating Eng'rs Local 15, 15A, 15C & 15D, AFLCIO*, 904 F.3d 174, 187 (2d Cir. 2018) (holding that when the ultimate burden of proof at trial would be on the non-moving party, the moving party "may satisfy their burden of production under Rule 56 by negating an essential element of the [non-moving party's] claim, whether by submitting undisputed evidence to that effect or by demonstrating the insufficiency of the [non-moving party's] own evidence." (quotations, alterations and citation omitted)).

2. Local Rule 56.1 Statements

When moving for summary judgment, in addition to complying with the Federal Rule of Civil Procedure 56, the parties must comply with Local Rule 56.1 of the United States District Courts of the Southern and Eastern Districts ("Local Rule 56"). As the Second Circuit has instructed, the Local Rule 56 "requirement is strict". *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009). Among other things, it:

> requires that any motion for summary judgment be accompanied by a list of the "material facts as to which the moving party contends there is no genuine issue to be tried." S.D.N.Y. & E.D.N.Y. R.56.1(a). The nonmoving party *must respond to each numbered allegation in the moving party's statement* and include, if necessary, a statement of the additional material facts, as to which a genuine issue exists. S.D.N.Y. & E.D.N.Y. R. 56.1(b). In the typical case, failure to respond to a Rule 56.1 statement results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met. *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 417-418 (2d Cir. 2009).

*Parris v. Acme Bus Corp.*, 956 F. Supp. 2d 384, 392 (E.D.N.Y. 2013)(emphasis added).

Furthermore, Local Rule 56.1(c) requires:

> Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party *will be deemed to be admitted* for purposes of the motion *unless **specifically** controverted **by a corresponding numbered paragraph*** in the statement required to be served by the opposing party.

(Italicized and boldface emphases added); *see also Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." (citations omitted)); *Taylor & Fulton Packing, LLC v. Marco Intern. Foods, LLC*, No. 09-cv-2614, 2011 WL 6329194, at *4 (E.D.N.Y. Dec. 16, 2011)("Where a nonmovant . . . files a deficient statement, courts frequently deem all supported assertions in the movant's statement admitted and find summary judgment appropriate." (footnote omitted)).  Moreover, to specifically controvert a statement of material fact, a nonmovant is required to do so with specific citation to admissible evidence.  *See* Local Rule 56(d); *see also Ezagui v. City of N.Y.*, 726 F. Supp.2d 275, 285 n.8 (S.D.N.Y. 2010)(noting statements which a nonmovant does "not specifically deny–with citations to supporting evidence–are deemed admitted for purposes of [movant's] summary judgment motion") (collecting cases); *Universal Calvary Church v. City of N.Y.*, No. 96-cv-4606, 2000 WL 1745048, *2 n.5 (S.D.N.Y. Nov. 28, 2000).  As the Second Circuit has observed, "'where there are no[] citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion.'" *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73-74 (2d Cir. 2001) (quoting *Watt v. N.Y. Botanical Garden*, No. 98-cv-1095, 2000 WL 193626, at *1 n.1 (S.D.N.Y. Feb. 16, 2000); further citations omitted), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).  Indeed, "[w]here . . . the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be

disregarded and the record reviewed independently." *Id.* (citing *Zanghi v. Inc. Village of Old Brookville*, 752 F.2d 42, 47 (2d Cir. 1985)) (footnote omitted). Relatedly, it is not the role of the Court to search the summary judgment record for evidence supporting a nonmovant's opposition. *See N.Y.S. Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005)(recognizing authority of district courts to institute local rules governing summary judgment submissions, which permits courts "to efficiently decide" such motions "by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'" (further citations omitted)); *Ford v. Ballston Spa Cent. Sch. Dist.*, Nos. 05-cv-1198, 05-cv-1199, 2008 WL 697362, at *3 (N.D.N.Y. Mar. 13, 2008) (same).

### 3. § 1983 Causes of Action, Generally

Section 1983 provides for an action at law against a "person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects or causes to be subjected, any citizen of the Unites States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and law." 42 U.S.C. § 1983. It "is not itself a source of substantive rights"; rather, it merely provides "a method for vindicating federal rights elsewhere conferred . . . ." *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004)(quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Lockwood v. Town of Hempstead*, No. 16-cv-3756, 2017 WL 3769253, at *2 (E.D.N.Y. Aug. 28, 2017) (stating § 1983 provides only a procedure for redress for the deprivation of rights established elsewhere)(adopting report & recommendation). "Therefore, to prevail on a claim arising under Section 1983, a plaintiff must establish: '(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law.'" *Lockwood*, 2017 WL

3769253, at *2 (quoting *Hawkins v. Nassau County Corr. Facility*, 781 F. Supp.2d 107, 111 (E.D.N.Y. 2011)).

4. <u>Malicious Prosecution Claim</u>

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002)(citations omitted); *see also Graham v. City of N.Y.*, 869 F. Supp.2d 337, 355 (E.D.N.Y. 2012)("Generally, the elements of a federal claim for malicious prosecution under § 1983 are borrowed from the underlying analogous claim under state law."). Hence, "[n]o claim for malicious prosecution lies where the plaintiff was 'never taken into custody, imprisoned, physically detained or seized within the traditional meaning of the Fourth Amendment.'" *Graham*, 869 F. Supp.2d at 356 (quoting *Washington v. County of Rockland*, 373 F.3d 310, 315-16 (2d Cir. 2004); further citation omitted).

To establish a malicious prosecution claim under New York law, a plaintiff is "required to show the following: '(1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice[,] and[] (4) the matter terminated in plaintiff's favor.'" *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016)(alterations in original)(quoting *Cameron v. City of N.Y.*, 598 F.3d 50, 63 (2d Cir. 2010)). Further, "when a malicious prosecution claim is premised on a civil proceeding, a plaintiff must show a 'special injury'—'some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit.'" *Gordon v. City of N.Y.*, 09-cv-4577, 2016 WL 3976657, at *6 (E.D.N.Y. July 22, 2016)(quoting *Engel v. CBS, Inc.*, 93 N.Y.2d 195, 198, 205 (1999)). However, where a plaintiff is charged in

an administrative proceeding, but "never taken into custody, imprisoned, physically detained or seized within the traditional meaning of the Fourth Amendment," there is no deprivation of liberty constituting a Fourth Amendment violation. *Washington*, 373 F.3d at 317. Hence, "it is unlikely that a civil proceeding . . . would implicate constitutional rights in a manner that would warrant redress under § 1983." *Id.*; *see also Graham*, 869 F. Supp.2d at 356 (quoting *Washington*).

     5.  <u>Malicious Abuse of Process Claim</u>

> Under either New York or federal law, "a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir.1994). * * * "[T]he proper use of legal process based on an improper or malicious motive such as a desire for retaliation is insufficient to satisfy the 'collateral objective' requirement." *Pinter v. City of New York*, 976 F. Supp.2d 539, 568 (S.D.N.Y.2013). "A malicious abuse of process claim thus requires an ulterior purpose such as the infliction of economic harm, extortion, blackmail, or retribution." *Hovos v. City of New York*, 999 F. Supp.2d 375, 391 (E.D.N.Y. 2013).
>
> "[T]he gist of abuse of process is the improper use of process after it is regularly issued." *Cook*, 41 F.3d at 80. Accordingly, to succeed on an abuse of process claim, a plaintiff must not only show a collateral objective, but must show that that objective was pursued after legal process was issued. *Richardson v. N.Y.C. Health & Hosps. Corp.*, No. 05–CV–6278 (RJS), 2009 WL 804096, at *16–17 (S.D.N.Y. Mar.25, 2009).
>
> "Finally, while the law is not entirely settled on this point, the weight of authority holds that the presence of probable cause negates a claim for abuse of criminal process." *Pinter*, 976 F. Supp.2d at 568–69 (collecting cases).

*Slater v. Mackey*, No. 12-cv-4325, 2015 6971793, at *10 (E.D.N.Y. Nov. 10, 2015); *see also*

*Fiedler v. Incandela*, 222 F. Supp.3d 141, 164-65 (E.D.N.Y. 2016)(same); *Hurley v. Town of*

*Southampton*, No. 17-cv-5543, 2018 WL 3941944, at *15-16 (report & recommendation)(same), *adopted by electronic order* (E.D.N.Y. Sept. 21, 2018).

### 6. Interference with Familial Association Claim

A right of familial association, particularly between parents and children, is a recognized fundamental element of personal liberty which enjoys constitutional protection. *See Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984); *see also Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002); *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 103 (2d Cir. 1999)(holding that a "parent's interest in the custody of a child [is] a constitutionally protected liberty interest subject to due process protection" (alteration in original; internal quotations and citation omitted)). However, a parent's consent to the removal of a child or children "vitiates any due process or Fourth Amendment claims" as a waiver of that right. *Thomas v. Digglio*, No.15-cv-3236, 2016 WL 7378899, at *8 (E.D.N.Y. Dec. 20, 2016)(citing generally *United States v. Smith*, 308 F.2d 657, 663 (2d Cir. 1962))(when a person "consents to a search or seizure . . . the protection he would have enjoyed under the Fourth Amendment is lost to him"); *Kreuter v. Reuter*, No. 01-cv-5529, 2002 WL 31946715, at *5 (E.D.N.Y. Dec. 5, 2002)("The Supreme Court has consistently held that constitutional rights may be waived under certain circumstances.")(collecting cases). Moreover, "[i]n the context of a seizure of a child by the State during an abuse investigation . . . , a court order is the equivalent of a warrant." *Tenenbaum*, 193 F.3d at 602. Further, to the extent a child is removed from his or her parents' custody pursuant to a family court order, there is no claim for interference with rights to familial association. *See Southerland v. City of N.Y.*, 680 F.3d 127, 153 (2d Cir. 2012) (holding there is no § 1983 liability where family court approves removal of children); *see also, e.g., Sulaymu-Bey v. City of N.Y.*, No. 17-cv-3563, 2019 WL 1434597, at *6 (E.D.N.Y. Mar. 29, 2019) (same).

### 7. Conspiracy Claim

To prove a § 1983 conspiracy, a plaintiff must show: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002); *see also Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)(same). However, where all substantive § 1983 claims against named state actors have been dismissed, claims alleging participation in a civil rights conspiracy must also be dismissed. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)("[T]he [conspiracy] lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right."); *see also Donofrio v. City of N.Y.*, 563 F. App'x 92, 94 (2d Cir. 2014) ("Because neither of the underlying section 1983 causes of action can be established, the claim for conspiracy also fails." (quoting *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009)).

### 8. *Monell* Claim

Under *Monell*, a municipal entity may be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." *Monell [v. Dep't of Soc. Servs. of City of N.Y.]*, 436 U.S. [658,] 694–95 [(1978)]; *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733–36 (1989)[,] and *Monell*, 436 U.S. at 692–94). To prove a *Monell* claim, a plaintiff must show: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) (citations omitted). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). However, a municipal entity may only be held liable where the entity *itself* commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

*Moroughan v. County of Suffolk*, 99 F. Supp.3d 317, 326 (E.D.N.Y. 2015). When bringing a

*Monell* claim, a plaintiff must demonstrate one of four types of customs or practices, *i.e.*:

> (1) the existence of a formal policy which is officially endorsed by
> the municipality; (2) actions taken or decisions made by municipal
> officials with final decision-making authority, which caused the
> alleged violation of the plaintiff's civil rights; (3) a practice so
> persistent and widespread that it constitutes a custom of which
> constructive knowledge and acquiescence can be implied on the
> part of the policy-making officials; or (4) a failure by policymakers
> to properly train or supervise their subordinates, amounting to
> "deliberate indifference" to the rights of those who come in contact
> with[]the municipal employees.

*Naples v. Stefanelli*, 972 F. Supp.2d 373, 387 (E.D.N.Y. 2013); *see also Saunders v. N.Y.C.*

*Dep't of. Educ.*, No. 07-cv-2725, 2010 WL 2816321, at *21 (E.D.N.Y. July 15, 2010)(same).

### 9. Absolute Immunity from § 1983 Liability

"Absolute immunity is reserved for officials who perform 'special functions' and deserve

absolute protection from damages liability. Among these are prosecutors, and persons working

under their direction, when they function as advocates for the state in circumstances 'intimately

associated with the judicial phase of the criminal process.'" *Bernard v. County of Suffolk*, 356

F.3d 495, 502 (2d Cir. 2004)(quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)).

Absolute immunity has been extended "to non-prosecutor officials when they are performing

'functions analogous to those of a prosecutor.'" *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir.

2010) (quoting *Butz v. Economou*, 438 U.S. 478, 515 (1978)). In making such a decision, a court

is to engage in a "functional" analysis, *i.e.*, analyzing "the kind of function the employee is

fulfilling in performing the acts complained of." *Id.* (citing *Briscoe v. LaHue*, 460 U.S. 325, 342

(1983)). The focus of this analysis is "'the nature of the function performed, not the identity of

the actor who performed it.'" *Bernard*, 356 F.3d at 503 (quoting *Buckley v. Fitzsimmons*, 509

U.S. 259, 269 (1993)). Thus, for example, relying on that approach, "the *Butz* Court held that an

agency official who decides to institute an administrative proceeding is entitled in such circumstances to absolute immunity, since that decision is 'very much like the prosecutor's decision to initiate or move forward with a criminal prosecution.'" *Cornejo*, 592 F.3d at 127 (quoting *Butz*, 438 U.S. at 515).

The person claiming absolute immunity bears the burden of establishing its applicability. *See Bernard*, 356 F.3d at 503 (citing *Butz*, 438 U.S. at 506). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused." *Id.* (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)).

    10.  Qualified Immunity from § 1983 Liability

> Individual defendants are "'shielded from liability for civil damages'" under 42 U.S.C. §1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Wilson v. Layne*, 526 U.S. 603, 609, 119 S. Ct. 1692, 143 L. Ed.2d 818 (1999)(quoting *Harlow* [*v. Fitzgerald*], 457 U.S. [800], 818 [(1982)]; *accord Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007). "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.'" *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir.2003)(quoting *Young v. Cnty of Fulton*, 160 F.3d 899, 903 (2d Cir.1998)).

*Laster v. Mancini*, No. 07-cv-8265, 2013 WL 5405468, at *30 (S.D.N.Y. Sept. 25, 2013)(adopting report and recommendation). "Stated differently, an official is entitled to qualified immunity (1) if the plaintiff has not alleged a violation of a constitutional right, (2) if that right was not clearly established at the time of the conduct, *or* (3) if the official's actions were not objectively unreasonable in light of clearly established law." *Almonte v. City of Long*

*Beach*, 478 F.3d 100, 109 (2d Cir. 2007) (citing *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211-12 (2d Cir. 2003)).

As the Second Circuit has described it, "qualified immunity provides a broad shield," thereby giving officials "'breathing room to make reasonable but mistaken judgments' without fear of potentially disabling liability." *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)). It "shields public officials from personal liability for official actions, 'unless their conduct violates clearly established constitutional rights of which an objectively reasonable official would have known.'" *Almonte*, 478 F.3d at 108 (quoting *Harhay*, 323 F.3d at 211; further citation omitted).

In making determinations on qualified-immunity claims, the Supreme Court requires a court to determine two matters, *i.e.*, (1) whether the facts alleged by the plaintiff are sufficient to make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (discussing *Saucier v. Katz*, 533 U.S. 194 (2001)). It is within the court's discretion to determine which of the two inquiries to decide first. *See id.* at 236.

*B. The Instant Case*

As a preliminary matter, while acutely cognizant of the emotionally charged nature of this case, the Court is, nonetheless, bound to apply the applicable Federal and Local Rules of Civil Procedure here consistent with their application in any other case, regardless of its nature.

1. Plaintiffs' Rule 56.1 Statement

In noncompliance with Local Rule 56.1(b), which requires "a corresponding numbered paragraph responding to each numbered paragraph in the statement of the moving party," Plaintiffs have submitted 16 unnumbered, non-corresponding, and predominantly unresponsive

paragraphs to the County Defendants' Rule 56.1 Statement.  (*See* Plaintiffs' 56.1 Statement, *in toto*.)  That is, Plaintiffs have not specifically controverted the County Defendants' Rule 56.1 Statements, which the relevant rule, Local Rule 56.1(c), unambiguously requires.  Further, as the Plaintiffs have put forth bald "statements of fact," they have also failed to comply with Local Rule 56.1(d), which dictates that "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, *must* be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  (emphasis added).  The Second Circuit has stated that "where there are no[] citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion."  *Holtz*, 258 F.3d at 74.  Hence, the County Defendants' Rule 56.1 Statements are deemed admitted for purposes of the Summary Judgment Motion.  *See Giannullo*, 322 F.3d at 140 (where opposing party fails to controvert a fact, that fact is deemed admitted); *Taylor & Fulton*, 2011 WL 6329194, at *4 (deeming admitted facts asserted in a movant's Rule 56.1 Statement where nonmovant's Rule 56.1 Statement is deficient); *see also Ezagui*, 726 F. Supp.2d at 285 n.8 (deeming admitted Rule 56.1 Statements not specifically denied with citations to supporting evidence for purposes of deciding summary judgment motion); *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp.3d 287, 305 (S.D.N.Y. 2015) ("[I]f a party fails to properly support a statement by an adequate citation to the record, the Court may properly disregard that assertion."); *Emanuel v. Griffin*, No. 13-cv-1806, 2015 WL 1379007, at *2 (S.D.N.Y. Mar. 25, 2015).

### 2. Plaintiffs' Attempt to Present Disputed Facts

To the extent that, in their Opposition, the Plaintiffs cite to evidence in the record to dispute the facts put forth by the County Defendants, the Court is unpersuaded by same.  For

example, in their "Statement of Facts" section, Plaintiffs' state and then cite, respectively, *inter alia*:

> (a.) That "it was obvious . . . the Northwell Defendants, in furtherance of a conspiracy or other nefarious reason, misled CPS workers . . ." about injuries suffered by Lana, citing to: Exhibit 1, a January 9, 2014 "ORDER DIRECTING TEMPORARY REMOVAL OF CHILD"; Exhibit 2, which appears to be a form affidavit or petition (re: Damien) executed by Joy DeCordova, as Petitioner, on January 13, 2014 (unnumbered, beginning at ¶3); and Exhibit 3, which is a January 9, 2014 Family Court "Temporary Order of Protection" (re: Damien). Yet, none of the cited evidence demonstrates a conspiracy, the furtherance of a conspiracy, of any other nefarious reason; and

> (b.) That "CPS never had the information being conveyed to them by the Northwell Defendants confirmed . . . ," citing to: Exhibit 4 at 29, an excerpt of the deposition testimony of CPS worker Peterson generally testifying, *inter alia*, that she does not question the validity of information provided to her by doctors (*see id.* at 29:16-21); and, Exhibit 5 at 23 & 39, excerpts from the deposition testimony of Steven Nacht, an Assistant County Attorney with the Department of Social Services. (*See* Ex. 13 at 3:5-7 (Tr. Dec. 9, 2014 Family Court Hr'g).) Plaintiffs' citation to Peterson's selected testimony does not support their purported fact of non-verification by CPS. Moreover, Plaintiffs' selective citation is disingenuous, as Peterson further testified that when she filled out removal petitions, she relied on various sources in gathering information put forth in those petitions. (*See* Ex. 4 at 31:16-24.) Further, to the extent the Plaintiffs rely on Nacht's testimony, that reliance is misplaced as he is not a CPS worker and, in any event, his testimony is taken out of context. (*Cf.*, Ex. 5 at 39, *with* 38 (relying on medical information from Northwell Defendants as it related to understanding autopsy results, not as it related to initiating Protective Proceedings).)

In another instance, Plaintiffs rely on Peterson's deposition testimony to support their version of the facts, stating: "When asked if law enforcement closing the cases as 'non-criminal'

had any effect on the decision to proceed both before and after autopsy, CPS's response was stark: 'I didn't give it much thought.'" (Opp'n at 4 (citing Ex.4 at 68).) Yet, the quoted testimony has nothing to do with law enforcement's closing its investigation, *to wit*:

> Q: Well, I'm asking you as a CPS worker did you say okay, this child has intentional trauma to her neck and a brain injury?
> A: So did I think that they were connected?
> Q: Right.
> A: I guess. I didn't give it much thought.

(Ex. 4, 66:14-19 (examining Peterson regarding her discussions with Cristin Gilleran, a social worker).) Their selective citation to out-of-context testimony undermines the credibility of the facts the Plaintiffs attempt to present in their Opposition.

In a further effort to support their Opposition, *i.e.*, that "[d]epositions proved CPS was plainly incompetent, and Northwell intentionally deceptive" (Opp'n at 3), Plaintiffs offer a sweeping citation:

> respectfully point[ing] to the deposition testimony of CPS senior caseworker Maureen Paterson at pages 51, 63, 67, 69, 72-75, 86, 91-93, 1591-60 [*sic*], 197 (Ex. "4"); the deposition of Steven Nacht at pages 11-28 (Ex. "5"); the declaration of Michele McCarthy, the Court-appointed law guardian (Ex. "6"); the declaration of Theresa Mari, Esq (Ex. "7"); the deposition of CPS worker Joy DeCordova at pages 24-25 (Ex. "8"); the deposition of Colleen Pidel at 44, 57, 59, 64, 70-71, 78, 91, 97 (Ex. "9"); the deposition of Jeffrey Tavel at pages 16, 19-20 (Ex. "10"); the declaration of Robert Venturo, Esq. (Ex. "11"); and the declaration of Dr. Robert Peyster (Ex. "12").

(*Id.* at 3.) First, to the extent Plaintiffs cite to an entire exhibit, without greater specificity, the Court need not consider it. *See, e.g., Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470-71 (2d Cir. 2002)("[B]ecause nothing in the federal rules mandates that district courts conduct an exhaustive search of the entire record before ruling on a motion for summary judgment, district courts are entitled to order litigants to provide specific record citations."); *EC ex rel. RC v.*

*County of Suffolk*, 882 F. Supp.2d 323, 338 n.5 (E.D.N.Y. 2012)("Mere reference, for example,

to an entire deposition is not 'specific'."); *see also* Local Rule 56.1(c) (requiring each numbered

paragraph to be "specifically controverted" by the party opposing summary judgment).

"Naturally, any *factual statements must cite to the record with specificity* in the first instance."

*EC ex rel. RC*, 882 F. Supp.2d at 338 n.5 (emphasis added). By not following the requirements

of Local Rule 56.1(b) & (c), instituted to obviate burdening the courts with the onerous task of

hunting through voluminous records for evidence supporting a nonmovant's opposition, s*ee*

*generally, e.g., Patacca v. CSC Hldgs, LLC*, No. 16-cv-679, 2019 WL 1676001, at *17

(E.D.N.Y. Apr. 17, 2019) (ruling it is "not role of the Court to search the summary judgment

record for evidence supporting a nonmovant's opposition")(citations omitted), and because they

have not provided specific citations to Exhibits 6, 7, 11, or 12, Plaintiffs' citation to them will

not be considered by the Court.

     Second, as to:

> (a.) Peterson's Cited Deposition Testimony (*see* Ex. "4" at 51, 63,
> 67, 69, 72-75, 86, 91-93, 159-160,[8] 197[9]): The Court has reviewed
> this portion of the testimony and finds it does not support
> Plaintiffs' position. For example, while Peterson testified that she
> did not seek a second opinion after speaking with Hoffman-
> Rosenfeld, without more, that does not evince incompetence on the
> part of CPS or intentional deception by the Northwell Defendants.
> Indeed, Peterson further testified that Hoffman-Rosenfeld had
> spoken with other doctors, by way of explaining her reliance on
> Hoffman-Rosenfeld's opinion that Lana's injuries were non-

---

[8] This excerpt of Peterson's testimony relates to Plaintiffs' counsel's questioning of Peterson
about her understanding of the meaning of information included in a Petition filed against
Mother, which was prepared by another CPS worker relying, in part, on information gathered by
Peterson. (*See, e.g.*, Ex. 4 at 158:24-159:2.) Accordingly, it is of little to no probative value as
to Plaintiffs' contention that CPS was incompetent and the Northwell Defendants intentionally
deceptive.

[9] There is no page 197 in Exhibit 4.

accidental trauma in nature. (*See id.* at 86:19-23; *see also id.* at 72:13-15.) Further, Peterson testified that before commencing the Protective Proceedings, a meeting was conducted to discuss the investigation; in attendance were, *inter alia*: Peterson, a hospital social worker, Dr. Hoffman-Rosenfeld, CPS Supervisor Pidel, Assistant Director Lloyd Cohen, police detectives Bruce Croce and Michelle DeMartino, a DDS nurse/medical specialist, and possibly an Assistant District Attorney and Dennis Nowak (*see id.* at 71:2-12; 72:2-9);

(b.) Nacht's Cited Deposition Testimony (*see* Ex. "5" at 11-28): The Court has reviewed this portion of the testimony, notes Nacht is not a CPS worker (but an Assistant County Attorney), and finds it does not support Plaintiffs' position;

(c.) DeCordova's Cited Deposition Testimony (*see* Ex. "8" at 24-25): The Court has reviewed this portion of the testimony, in addition to prior testimony (*see id.* at 16-23), and finds it does not support Plaintiffs' position; and

(d.) Tavel's Cited Deposition Testimony (*see* Ex. "10" at 16, 19-20): The Court has reviewed this portion of the testimony, notes Tavel is not a CPS worker (but an Assistant County Attorney), and finds it does not support Plaintiffs' position.

In sum and even assuming, *arguendo*, that the County Defendants' Rule 56.1 Statements were not deemed admitted, while CPS may have conducted its investigation of alleged abuse and neglect of Lana (and the Brothers) in a manner the Plaintiffs believe inappropriate, Plaintiffs have not pointed to any admissible evidence that CPS relinquished its role in that investigation to the Northwell Defendants or that CPS knew that the Northwell Defendants were intentionally deceptive or misleading in the information they provided the CPS workers.

### 3. Plaintiffs' Malicious Prosecution Claims

"[W]hile '[m]alicious prosecution claims are generally limited to criminal actions, . . . a § 1983 malicious prosecution claim in a civil proceeding can be sustained *if* there is 'a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and

28

privacy interests under the Fourth Amendment.'" *Gordon*, 2016 WL 3976657, at *7 (quoting *Cornejo v. Bell*, Nos. 04-cv-0341 & 06-cv-2910, 2008 WL 5743934, at *12 (E.D.N.Y. May 19, 2008)(further citation omitted))(emphasis added).

   (a.) *The Parents*. The basis for the Parents' 1983 malicious prosecution claim is that "based upon false and misleading affidavits and under the threat of being jailed by coercive [Family] Court Order, [they] had their liberty curtailed to the extent that they could not have any contact whatsoever with [Lana]" or the Brothers. (Opp'n at 10; *see also, e.g., id.* at 19 (generally arguing without citation to the record that "the Complaint and deposition testimony prove that the affidavits in support of the petition were 'intentionally false and misleading'", and that "based on the allegations appearing in the Complaint and what has been proven at discovery, the County's motion must be denied"), and *id.* at 21 ("Here, the Complaint alleges, and discovery has proven, that because each of the factual allegations offered offered [*sic*] in support of removal and Orders of Protection applications were knowingly and recklessly made, a constitutional violation is present . . . .") (citing *Young v. County. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998))(without citation to evidence in the record).)

  It appears that the Parents are claiming a violation of their "constitutionally protected liberty interest in the care, custody and management of their children [which are] rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." *Tenenbaum*, 193 F.3d at 593 (internal quotation marks and citations omitted; collecting cases). However, "[w]hile New York recognizes the tort of civil malicious prosecution, a claim for malicious prosecution under § 1983 may only arise where there has been a violation of the plaintiff's Fourth Amendment rights." *Graham*, 869 F. Supp.2d at 356 (collecting cases); *see also id.* at 355 ("The temporary orders of protection procured from the

Family Court at the [municipal] Defendants' request did not constitute a seizure under the Fourth Amendment," and "[P]arents do not have their own Fourth Amendment right to be free from a child's court-approved removal."); *see also Southerland*, 680 F.3d at 152-53; *Tenenbaum*, 193 F.3d at 600 (discussing substantive due-process rights in the context of parents' rights to remain together without the coercive interference of the state); *Gordon*, 2016 WL 3976657, at *8 (finding plaintiff's claimed violation of her Fourteenth Amendment rights to custody and visitation of her child did not support a § 1983 malicious prosecution cause of action because it was premised on a substantive due process theory, "[b]ut 'a claim of malicious prosecution may not be brought as a substantive due process claim'" (quoting *Singer v. Fulton County. Sheriff*, 63 F.3d 110, 115 (2d Cir. 1995)). Indeed, the Second Circuit has recently "note[d] that the law in [this] Circuit is unsettled as to whether child removal proceedings can give rise to a federal claim for malicious prosecution of a parent." *Walker v. City of N.Y.*, 621 F. App'x 74, 76 (2d Cir. 2015)("*Walker II*")(citing *Estiverne v. Esernio-Jenssen*, 833 F. Supp.2d 356, 380 (E.D.N.Y. 2011)); *see also Walker v. City of N.Y.*, 63 F. Supp.3d 301, 317 n.12 (E.D.N.Y. 2014)("*Walker I*")("It is likely that no plaintiff in this action can even state a claim for a malicious prosecution as the 'Adult Plaintiffs have not been seized, and Infant Plaintiffs have not been prosecuted.'" (quoting *Estiverne*, 833 F. Supp.2d at 380)).

In any event, there is no dispute that the Parents were not arrested or otherwise taken into physical custody in connection with the Protective Proceedings. (*See* County's Rule 56.1 Statement, ¶20; *cf.*, Plaintiffs' Rule 56.1 Statement, (unnumbered ¶12).) Hence, there is no Fourth Amendment violation upon which to base their § 1983 malicious prosecution claim. To the extent the Parents would support their § 1983 malicious prosecution claim by relying upon the alleged false and misleading affidavits of the CPS workers, the Court notes they have not put

forth admissible evidence supporting their contentions about the affidavits. (*See, e.g.*, Plaintiffs' Rule 56.1 Statement, (unnumbered) ¶12 (without supporting citation) ("[O]n January 9, 2014, a pre-petition removal application was made and, based upon its contents, Lana [] was placed in the care of Suffolk County while [the Brothers] were placed in foster care with their maternal grandparents."); *see also, e.g., id.* (unnumbered) ¶13 (without supporting citation)("On January 13, 2014, a petition alleging severe abuse was filed in the Family Court alleging that Lana sustained widespread bleeding in her brain, spinal court injury, and injuries to her neck ligaments and further, that the injuries are those as seen when shaking an infant.").) On the record presented, the Parents cannot make out a § 1983 malicious prosecution claim because they have failed to present admissible evidence establishing their seizure or a perversion of proper legal procedures that implicated their personal liberty and privacy interests.

(b.) *Lana*. Lana was placed in the care of Suffolk County in connection with the Protective Proceedings. (*See* Plaintiffs' Rule 56.1 Statement, (unnumbered) ¶12.) However, since she was a subject of the Protective Proceedings and not a party to it, *see, e.g., Matter of Comm'r Soc. Servs.*, 170 Misc.2d 126, 129 (N.Y. Fam. Ct., Kings Cty. 1996)(children are subjects of protective proceedings, not parties to them); *see also Matter of Diane B.*, 96 Misc.2d 798, 800 (N.Y. Fam. Ct., Monroe Cty. 1978)("hold[ing] that a child is not a 'party' to a child protective proceeding"), there was no prosecution against her by the County Defendants. Thus, the malicious prosecution claim on her behalf cannot be maintained, warranting summary judgment in the County Defendants' favor.

(c.) *The Brothers*. The Brothers were placed in the care of their maternal grandparents in connection with the Protective Proceedings. (*See* Plaintiffs' Rule 56.1 Statement, (unnumbered) ¶12.) Even if the Brothers could maintain a claim of malicious

prosecution, their placement was done with the Parents' consent, thereby "vitiat[ing] any due process or Fourth Amendment claims . . . ." *Thomas*, 2016 WL 7378899, at *8. Hence no malicious prosecution claims on behalf of the Brothers could be maintained in this instance.

### 4. Plaintiffs' Abuse of Process Claim

Plaintiffs have not responded in any meaningful way to the County Defendants' argument that Plaintiffs cannot sustain their § 1983 abuse of process claim. (*See* Support Memo. at 10; *cf.*, Opp'n, *in toto*.) As such, they are deemed to waive that claim. *See, e.g., Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014)("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016)("Even where abandonment by a counseled party is not explicit, a court may infer abandonment from the papers and circumstances viewed as a whole." (internal quotation marks and citation omitted)); *Neurological Surgery, P.C. v. Travelers Co.*, 243 F. Supp.3d 318, 329 (E.D.N.Y. 2017)(deeming an argument waived because it was not addressed in a party's opposition brief); *see also Petrisch v. HSBC Bank USA, Inc.,* No. 07-cv-3303, 2013 WL 1316712, at *17 (E.D.N.Y. Mar. 28, 2013)(collecting cases holding that where party fails to address arguments in opposition papers on summary judgment motion, the claim is deemed abandoned); *Bryant v. S. Country Cent. Sch. Dist.*, No. 14-cv-5621, 2017 WL 1216553, at *19 (E.D.N.Y. Mar. 31, 2017)(in failing to pursue theory in support of claim, claim is deemed waived); *Robinson v. Am. Int'l Grp., Inc.*, No. 08-cv-1724, 2009 WL 3154312, at *4 & n.65 (S.D.N.Y. Sept. 30, 2009) (collecting cases where claims deemed abandoned for failing to oppose arguments raised in summary judgment motions), *aff'd*, 396 F. App'x 781 (2d Cir. 2010); *see also, e.g., Johannes Baumgartner Wirtschafts-Und Vermogensberatung GmbH v. Salzman,*

969 F. Supp.2d 278, 290 (E.D.N.Y. 2013)("[A] Court need not entertain an argument that was not briefed.")(citing *Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 228 n.6 (S.D.N.Y. 1990)).

Even if that were not so: (a) there is no evidence that CPS workers Encarnacion, Peterson, and Pidel, or Nowak or O'Neill, initiated the Protective Proceedings against the Parents or improperly employed any other form of regularly issued process against the Parents; and (b) other than that DeCordova signing the Petitions, which is legal process designed "to 'help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being' rather than to punish the respondents," *Matter of Diane B.*, 96 Misc.2d at 800 (citing Family Ct. Act § 1011), Plaintiffs fail to cite to any admissible evidence that DeCordova intended to harm the Parents without justification or sought to obtain a collateral objective that is outside the legitimate ends of the process. Without such evidence, therefore, the Plaintiffs cannot support their abuse of process claims. *See generally, e.g., Fiedler v. Incandela*, 222 F. Supp.3d 141, 164-65 (E.D.N.Y. 2016)(granting defendants summary judgment where one defendant did not initiate legal proceedings and the other defendants did employ legal process but there was no evidence they intended harm to plaintiff or sought to obtain collateral objective outside the legitimate ends of the process); *Hardy v. Baird*, No. 13-cv-7402, 2016 WL 2745852, at *9 (S.D.N.Y. May 10, 2016)(without evidence that police pursued improper collateral purpose after issuance of appearance tickets, plaintiff had no abuse of process claim).

### 5. Plaintiffs' Interference with Familial Association Claim

The extent to which the Plaintiffs touch upon "familial relationships" is found in their opposition to the County Defendants' assertion of qualified immunity as a defense to the Plaintiffs' malicious prosecution claim. (*See* Opp'n at 18.) They have failed to present any

independent, meaningful argument in support of their interference with familial association claim (*see* Opp'n, *in toto*) or in opposition to the County Defendants' position that Plaintiffs cannot establish such a claim (*see* Support Memo at 15-16). Hence, they are deemed to have waived that claim. (*See supra* at Part III(B)(4) (discussing waiver of claim when plaintiff fails to argue in support of such claim, and collecting cases).)

While it is true that the Plaintiffs "have, in general terms, a substantive right under the Due Process Clause 'to remain together without the coercive interference of the awesome power of the state,'" *Tenenbaum*, 196 F.3d at 600 (quoting *Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977)), "[t]he right to family integrity does not include a constitutional right to be free from child abuse investigations." *Shapiro v. Kronfeld*, No. 00-cv-6286, 2004 WL 2698889, at *14 (S.D.N.Y. Nov. 24, 2004) (citations omitted). Moreover, there is an absence of admissible evidence establishing a violation of that right in this case. Rather, the evidence establishes that Lana's removal from her Parents' custody was done pursuant to a Family Court order, and the Brothers' removal was initially done with the consent of their Parents and continued pursuant to Family Court orders; hence, on the record presented, as a matter of law, no claim for interference with rights to familial association can be sustained. *See Southerland*, 680 F.3d at 153 (holding no § 1983 liability where family court approves removal of children); *see also, e.g., Sulaymu-Bey*, 2019 WL 1434597, at *6 ("Brief removals of a child 'generally do not rise to the level of a substantive due process violation, at least where the purpose of the removal is to keep the child safe during investigation and court confirmation of the basis for removal.'" (quoting *Southerland*, 680 F.3d at 153; internal quotations and citation omitted)).

6. <u>Plaintiffs' Conspiracy Claim</u>

As Plaintiffs cannot sustain their substantive § 1983 claims against the County

Defendants, resulting in their dismissal, Plaintiffs' conspiracy claim must also be dismissed as

unsustainable. *See Young*, 160 F.3d at 904 ("There was no deprivation of a federal constitutional

right, and therefore there can be no civil rights conspiracy to deprive that right."); *Singer*, 63

F.3d at 119 ("[T]he [conspiracy] lawsuit will stand only insofar as the plaintiff can prove the *sine*

*qua non* of a § 1983 action; the violation of a federal right."); *Donofrio*, 563 F. App'x at 94

(holding that were the plaintiff's "substantive claims fail on the merits, his civil conspiracy claim

must fail as well" (further citation omitted)).

In any event, there is no material fact precluding summary judgment in the County

Defendants' favor on Plaintiffs' conspiracy claim. Rather, to the extent the Plaintiffs attempt to

thwart the granting of summary judgment on this claim, their proffered evidence is insufficient.

First, the evidence put forth is done so through Plaintiffs' Opposition (*see* Opp'n at 24 (citing

"Exs. '6', '7', and '11'")), and not, as required, through their Rule 56.1 Statement. (*See supra* at

Part III(A)(2) & (B)(1) (discussing requirements of Local Rule 56.1 and its application to the

present case).) The Court has already deemed the County Defendants' Rule 56.1 Statement

admitted as unopposed (*see supra* at Part III(B)(1)), and there is nothing in that Rule 56.1

Statement which raises a genuine issue of material fact that the County Defendants reached any

agreement with the Northwell Defendants to violate the Plaintiffs' rights. Second, Plaintiffs'

cited Exhibits[10] are presented without the benefit of pinpoint citations. (*See* Opp'n at 24 (citing

---

[10] Exhibit 6 is the affidavit of Michelle McCarthy, Esq. (counsel for Lana and the Brothers in
Protective Proceedings), Exhibit 7 is the statement of Theresa Mari, Esq. (Father's counsel in
Protective Proceedings), and Exhibit 11 is the affidavit of Robert Venturo, Esq. (Mother's
counsel in Protective Proceedings).

"Exs. '6', '7', and '11'".)  As already discussed (*see supra* at Part III(A)(2) & (B)(2)), the Court

need not consider exhibits offered in their entirety, without the benefit of specific pinpoint

citations.  Finally, and in any event, even a cursory review of the proffered affidavits and

statement reveals that they contain inadmissible hearsay evidence (*see, e.g.*, Ex. 6, ¶¶10, 12; Ex.

7, ¶¶8, 10; Ex. 11, ¶8) and are not made on personal knowledge (*see, e.g.*, Exs. 6, 7, and 11

(lacking statements that affidavits/statement were made on personal knowledge)), which is

insufficient to oppose the Summary Judgment Motion.[11]  *See* Fed. R. Civ. P. 56(c)(4) ("An

affidavit or declaration used to support or oppose a motion *must be made on personal knowledge*,

set out facts that would be admissible in evidence, and show that the affiant or declarant is

competent to testify on the matters stated," (emphasis added)).

Moreover, to the extent the Plaintiffs rely on their allegations to support their § 1983

conspiracy claim (*see* Opp'n at 24 ("As part and parcel of this conspiracy agreement, *it is alleged*

that the parties submitted phony evidence and false affidavits while hiding other evidence in

order to create the illusion of probable cause . . . .")(emphasis added)), that is patently

insufficient at the summary judgment stage.  *See, e.g., McKenna v. Wright*, 386 F.3d 432, 436

(2d Cir. 2004)("[W]ith a motion for summary judgment adequately supported by affidavits, the

---

[11]  In their summary judgment papers, the Northwell Defendants argue that, pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, the Plaintiffs are not allowed to use Attorney Mari's or Attorney Venturo's respective declarations in support of their opposition to summary judgment because "neither Ms. Mari nor Mr. Venturo was ever disclosed by [P]laintiffs as a potential witness pursuant to Fed. R. Civ. P. 26(c)" and the Plaintiffs cannot show that their failure to disclose Mari and Venturo previously was justified or harmless.  (*See* ECF No. 150 at 11 (Northwell Defendants' Reply Memo in Support of Summary Judgment) (citing Ex. MM (Pls.' Rule 26(a)(1) Prelim. Discl.)(ECF No. 171-3), attached to Rosof Reply Decl.)); *see also id.* at 12 (arguing that Venturo's declaration is essentially an expert opinion concerning Family Court practice and procedure, but since Venturo was never identified as an expert witness, his declaration should be excluded) and note 7 (collecting cases).)  The Court agrees and finds the same holds true here.

party opposing the motion cannot rely on allegations in the complaint, but must counter the movant's affidavits with *specific* facts showing the existence of genuine issues warranting a trial." (citing Fed. R. civ. P. 56(c) (emphasis added)); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)(instructing that to defeat summary judgment, the non-movant must "go beyond the paper allegations of the pleading" and set forth specific facts showing that there is a genuine issue for trial); *Patacca*, 2019 WL 1676001, at *17 (same).

### 7. Lack of Personal Involvement; Immunity to the Plaintiffs' § 1983 Claims

#### (a.) *Defendant Nowak and Personal Involvement*

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Walker I*, 63 F. Supp.3d at 309 (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138; further citation omitted), *aff'd, Walker II*, 621 F. App'x 74; *see also Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016)("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotations and citation omitted)); (*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)(same). Personal involvement cannot be established by way of *respondeat superior*, *see e.g., Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003), but may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.[12]

Here, there is no evidence presented that Defendant Nowak:[13] participated directly in the initiation of the Protective Proceedings; was made aware of any wrong, let alone failed to remedy such wrong; created a policy or custom of unconstitutional practices; was grossly negligent; or exhibited deliberate indifference. Accordingly, the claims against Nowak in his individual capacity are dismissed for lack of personal involvement in the purported constitutional violations.[14] *See Walker I*, 63 F. Supp.3d at 310.

---

[12] "In *Iqbal*, in addition to clarifying pleading standards, the Supreme Court expounded on what is necessary to show the personal involvement of supervisory defendants for a *Bivens* action," holding "that under *Bivens*, '[a]bsent vicarious liability, each Government official . . . is only liable for his or her own misconduct.'" *Ojo v. United States*, No. 15-cv-6089, 2018 WL 3863441, at *9 (E.D.N.Y. Aug. 14, 2018)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009)). Hence, while "*Iqbal* implicitly abrogated, at least in part, the test for supervisory liability the Second Circuit articulated in *Colon* . . . , the Second Circuit has yet to resolve this issue." *Id.* Yet, even as "the weight of authority among the district courts in the Eastern District of New York suggests that only two of the *Colon*-factors—direct participation and the creation of a policy or custom—survive *Iqbal*," *Butler v. Suffolk County*, 289 F.R.D. 80, 94 n.8 (E.D.N.Y. 2013), there remains "a certain degree of 'conflict' among district courts about exactly how *Iqbal* affects *Colon*." *Ojo*, 2018 WL 3863441, at *9 (citations omitted). Indeed, in determining whether certain named defendants could be held liable pursuant to § 1983 regarding a state court child protective proceeding, District Court Judge Kuntz considered all five *Colon*-factors, noting that "absent contrary directive from the Second Circuit, all five *Colon* factors survive the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 . . . (2009)." *Walker I,* 63 F. Supp.3d at 310 n.10; *see also id.* at 309-10. This Court will do likewise.

[13] Defendant John O'Neill, Chief Executive of the Suffolk County Department of Social Services, identified as one of the County Defendants (*see* Notice of Motion (ECF No. 142), case caption; *see also* Support Memo at 1) is neither listed in the case caption of the FAC nor identified as a Party or otherwise mentioned therein. (*See* FAC *in toto*.) Similarly, the Plaintiffs have not mentioned Defendant O'Neill in their Opposition. (*See* Opp'n, *in toto*.) Therefore, Plaintiffs are deemed to have abandoned any claims against Defendant O'Neill, warranting the dismissal of the action against him. *See* Fed. R. Civ. P. 41(b). Alternatively, since there is no evidence of O'Neill's individual involvement in the purported constitutional violations, the claims against him are dismissed. *See Walker I*, 63 F. Supp.3d at 310.

[14] Alternatively, as the Plaintiffs never mention Nowak in their Opposition, they are deemed to have waived their claims against him. (*See supra* Part III(B)(4) (discussing waiver of claim when plaintiff fails to argue in support of such claim, and collecting cases).)

(b.)  *CPS Caseworker Joy DeCordova*[15]

Plaintiffs allege that Joy DeCordova is an employee of the DSS who, "in league with Dr. Hoffman-Rosenfeld, conspired or otherwise recklessly caused and wrongfully continued the prosecution of [the Parents] . . . without probable cause . . . ."  (Amended Complaint, ¶29; *see also, e.g.*, Opp'n at 3, 7, and 13.)  There is no material dispute that DeCordova signed the Petitions which initiated the Protective Proceedings and, thereafter, non-party County attorneys prosecuted those Proceedings.  DeCordova asserts she is entitled to absolute immunity from Plaintiffs' § 1983 claims because her involvement in the Protective Proceedings was quasi-prosecutorial in nature.  (*See* Support Memo at 11; Reply at 10-11.)

---

[15]  The County Defendants contend "no summons has ever been issued in [DeCordova's] name, and accordingly, she is not within the jurisdiction of the Court.  The time in which to bring her into this action is now expired."  (Support Memo at 1 n.2. (citing Fed. R. Civ. P. 4(m); *Owens v. Okure*, 488 U.S. 235 (1989)); *see also* County's 56.1 Statement, ¶6, n.1 (same).)  That is not correct; an "Affidavit of Service" was filed which indicates that service of "a true copy of the SUMMONS IN A CIVIL ACTION" was served upon Joy DeCordova, c/o DSS to a "LAURA E.," on December 21, 2017 (ECF No. 136).  However, that service was well outside the 90-day service time limit provided in Rule 4(m) of the Federal Rules of Civil Procedure since Plaintiffs' FAC was filed on March 27, 2017.  *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant . . . .").  Yet, even if their service upon DeCordova was not untimely, Plaintiffs failed to effect proper service upon her because their summons was not served with the Amended Complaint.  *See* Fed. R. Civ. P. 4(c)(1) ("A summons *must* be served with a copy of the complaint." (emphasis added)); *cf.*, Affidavit of Service (ECF No. 136).

However, the County Defendants did not raise this issue as an affirmative defense in their Answer to the Amended Complaint (*see* County Defendants' Answer (ECF No. 110) to at 7-9); nor did they bring it by way of a Rule 12(b) motion.  Therefore, the County Defendants have waived their defense of insufficiency of service of process.  *See* Fed. R. Civ. P. 12(h)(1) (a party waives its defense of, *inter alia*, insufficient service if it fails to raise such defense in a Rule 12(b) motion or fails to include it in a responsive pleading); *see also Santos v. State Farm Fire and Cas. Co.*, 902 F.2d 1092, 1095 (2d Cir. 1990); *Ohlson v. Cadle Co., Inc.*, No. 04-cv-3418, 2009 WL 5167652, at *2 (E.D.N.Y. Dec. 18, 2009)(finding defense of insufficient service waived where not raised in an answer or a Rule 12(b) motion).

An agency official "performing functions analogous to those of a prosecutor," such as investigating a complaint and, thereafter, initiating a prosecution, has absolute immunity from liability in a § 1983 action for damages arising out of the initiation of the action and its subsequent prosecution. *Emerson*, 740 F. Supp.2d at 392 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Butz v. Economou*, 438 U.S. 478, 514 (1978)). Indeed, "[t]he Second Circuit has specifically found that attorneys who pursue protective child litigation may be afforded absolute immunity as quasi-prosecutors." *Id.* (citing *Walden v. Wishengard*, 745 F.2d 149, 152 (2d Cir. 1984)). That absolute immunity may include an attorney's investigative work. *See Walden*, 745 F.2d at 152 (holding DDS attorney entitled to absolute immunity because her duties of investigating allegations of child abuse and initiating child protective actions are similar to those of a prosecutor acting as the State's advocate in a criminal matter). Relatedly, in New York, the Family Court Act authorizes child protective agencies, such as CPS, to originate child protective proceedings. *See Matter of Diane B.*, 96 Misc.2d at 800 (citing Family Ct. Act § 1032).

To the extent that the Plaintiffs' claim that CPS, through DeCordova, initiated the Protective Proceedings without first conducting an adequate investigation, arguing DeCordova "assign[ed] away [her] judgment and investigative responsibilities" and "relied exclusively on Defendant Hoffman-Rosenfeld's opinion that the [P]arents did not have an explanation [for Lana's injuries]" (Opp'n at 7), that argument is unavailing. "The decision whether to bring charges—and even the decision to bring charges in the absence of adequate evidence—falls squarely within a prosecutor's role as advocate and, therefore, is protected by absolute immunity." *Bryne v. City of N.Y.*, 736 F. App'x 263, 265 (2d Cir. 2018)(affirming the granting of absolute immunity to prosecutor as against plaintiff's claim the prosecutor "brought charges . .

40

. without first conducting an adequate investigation").  Since, in this instance, and as authorized by § 1032 of the Family Court Act, DeCordova was acting in a quasi-prosecutorial role by presenting the Petitions to originate the Protective Proceedings, which by their nature are designed to advocate on behalf of Lana and her Brothers, *see id.* (instructing courts to "focus on the nature of the function performed, not the identity of the actor who performed it")(quoting *Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004)); *see also Matter of Diane B.*, 96 Misc.2d at 800 (stating that the purpose of a child protective proceedings is "to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being" (quoting Family Ct. Act § 1011)), DeCordova was acting in a quasi-prosecutorial manner and is, therefore, entitled to absolute immunity from Plaintiffs' § 1983 claims.  *See Bernard*, 356 F.3d at 498 ("[A]s long as a prosecutor acts with colorable authority, absolute immunity shields his performance of advocative functions regardless of motivation."); *see also Anilao v. Spota*, 774 F. Supp.2d 457, 479 (E.D.N.Y. 2011)(collecting cases where alleged actions, including, *e.g.*, presenting false evidence to obtain a superseding indictment, were undertaken as part of a prosecutor's role as an advocate, thereby warranting absolute immunity).

    Plaintiffs' reliance on *Anilao* to challenge DeCordova's use of absolute immunity is unavailing.  (*See* Opp'n at 14-15.)  Judge Bianco was ruling on a motion to dismiss in *Anilao*, which is determined under the *Iqbal*[16] "plausibility" pleading standard,[17] a more deferential

---

[16] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[17]

        To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  *Ashcroft v. Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

standard than used in determining summary judgment motions, *i.e.*, requiring the presentation of admissible evidence to support the facts warranting judgment in the movant's favor. *See* Fed. R.Civ. P. 56(c); *see also* Fed. R. Civ. P. 56(a) ("The court *shall* grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (emphasis added)); *cf., e.g., Anilao*, 774 F. Supp.2d at 466-68 (summarizing the Court's determinations as to whether Plaintiff had sufficiently alleged various causes of action); *see also, e.g., id.* at 481 (stating the "plaintiffs have alleged a highly unusual set of circumstances" regarding investigatory conduct by defendant prosecutor); *id.* at 481 n.18 ("[The] functional analysis of the conduct at issue reveals that, *at this stage of the litigation*, plaintiffs have provided sufficient factual allegations regarding investigatory misconduct on the part of the County defendants to allow them to survive defendants' motion to dismiss." (emphasis added)); *id.* at 484 (finding "that plaintiffs have sufficiently alleged, *for purposes of defendants' motion to dismiss*, that the deprivation of plaintiffs' due process rights was caused by the County defendants' alleged investigatory conduct" (emphasis added)). Here, by contrast, the case is well beyond the pleading stage, with discovery having been completed and closed; yet, Plaintiffs have failed to put forth admissible evidence regarding investigatory misconduct, which would preclude finding DeCordova absolutely immune from Plaintiffs' § 1983 claims.

Even if DeCordova did not qualify for absolute immunity, she is entitled to qualified immunity. "[CPS] caseworkers and their superiors are generally entitled to qualified immunity from claims under Section 1983 if it was objectively reasonable for the caseworkers to believe

---

*Iqbal*, 556 U.S, at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

*Teitelbaum*, 2013 WL 563371, at *5.

their conduct did not violate clearly established statutory or constitutional rights of which a reasonable caseworker would have known." *V.S. v. Muhammad*, 595 F.3d 426, 430-31 (2d Cir. 2010)(citing *Cornejo*, 592 F.3d at 129). In *V.S. v. Muhammad*, child protection caseworkers,[18] relying on a doctor's report that the child's injuries "were indicative of 'shaken baby syndrome,'" notwithstanding that hospital staff had concluded the child's injuries was "likely sustained . . . during [a] fall [as] described by the grandmother," commenced child protective proceedings. *Id.* at 428. After the subsequent dismissal of the child protective proceeding against her, V.S., the child's mother, brought claims alleging violations of her "rights under the Fourth Amendment (search and seizure and malicious prosecution) and the Fourteenth Amendment (due process)," as well as "claims under New York law for malicious prosecution and abuse of process." *Id.* at 429. She alleged, "in essence, that [the doctor] had a long history of giving unreliable and misleading diagnoses of shaken baby syndrome and that ACS, knowing this, should not have proceeded in reliance on [the doctor's] opinions and without disclosing exculpatory evidence to the Family Court." *Id.* The Circuit Court found[19] it wholly unreasonable to impose on an ACS caseworker the obligation of assessing the reliability of a qualified doctor's past and present diagnoses even if it were known to ACS that the doctor had repeatedly misdiagnosed child injuries as evidence of child abuse, especially since the doctor: was a licensed physician; was "the head of the Child Protection Team at the hospital to which [the child] was taken"; her diagnosis was based upon "determinations made by another doctor . .

---

[18] The child protection caseworkers were employed by New York City Administration of Child Services ("ACS"), the City's agency analogous to CPS.

[19] The case was before the Circuit Court on an interlocutory appeal of ACS employees, including an ACS caseworker, of the district court's denial of absolute immunity and qualified immunity sought by those employees. *See id.* at 429, 430.

. of retinal hemorrhages, a common indicator of shaken baby syndrome"; "her opinion was shared by another well qualified physician"; and, there was an "absence of any plausible alternative." *Id.* at 431. Thus, "[e]ven if the ACS personnel here involved had been aware of [the doctor's] alleged 'reputation' for overdiagnosing child abuse, it still would not have been unreasonable for them to rely [up]on [the doctor's] diagnosis of [the child] in these circumstances." *Id.* Hence, the Circuit Court concluded that "as a matter of law, the [ACS d]efendants are entitled to qualified immunity and . . . the dismissal of all the federal charges against them." *Id.* This case is strikingly similar: Hoffman-Rosenfeld is a physician; she was the child abuse expert at Cohen's Children's Hospital (*see* Family Court Order at 12, 14; *see also, e.g.*, Pre-Petitions, Ex. B, ¶2b); her diagnosis was based upon input from two other doctors (*see* Family Court Order at 12, 14, 15; *see also* Hoffman-Rosenfeld's Progress Notes re: Lana, Ex. 19); she was concerned that neither Parent had a plausible explanation for Lana's injuries (*see id.* at 15; *see also, e.g.*, Pre-Petitions, Ex. B, ¶2b); and Lana suffered, *inter alia*, retinal hemorrhages (*see, e.g.*, Pre-Petitions, Ex. B, ¶2b, Petition, Ex. E, Addendum, ¶e). (*See also* Petitions, Ex. E, Addendum (indicating sources of information for Petitions included, *inter alia*: verbal statements of staff from Cohen Children's Hospital, including Hoffman-Rosenfeld and Cristin Gilleran, LCSW, made to CPS personnel; records of Cohen Children's Hospital; and the records of CPS and DSS).) Thus, it was not unreasonable for DeCordova to rely upon, *inter alia*, Hoffman-Rosenfeld's report.

### (c.) *The Other CPS Caseworkers*

"[S]ummary judgment should . . . be 'readily available to . . . [protective services] caseworkers in proper cases under the qualified immunity doctrine.'" *Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010)(quoting *Tenenbaum v. Williams*, 193 F.3d 581, 596 (2d Cir. 1999)). Individual government actors performing discretionary tasks are entitled to qualified immunity if: "(a) the

> defendant's action did not violate clearly established law, or (b) it
> was objectively reasonable for the defendant to believe that his
> action did not violate such law." *Wilkinson ex rel. Wilkinson v.*
> *Russell*, 182 F.3d 89, 103 (2d Cir. 1999)(quoting *Tierney v.*
> *Davidson*, 133 F.3d 189, 196 (2d Cir. 1998)).

*Walker I*, 63 F. Supp.3d at 312; *see also Robertson v. Allen*, No. 15-cv-11, 2016 WL 205381, at

*10 (N.D.N.Y. Jan. 15, 2016)("[C]aseworkers are generally entitled to qualified immunity for

their investigative duties."); *Nelligar v. Clark*, No. 10-cv-743, 2012 WL 6204226, at *6

(S.D.N.Y. Dec. 7, 2012)("Because the individual [County D]efendants are government officials

sued for the performance of their discretionary duties, they are entitled to qualified immunity as

long as it would not have been clear to reasonable officials that their conduct was unlawful in the

situation they confronted.") (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled in part*

*on other grounds by Pearson v. Callahan*, 555 U.S. 232 (2009)).

Moreover,

> [i]n cases of suspected child abuse, . . . caseworkers are often faced
> with the choice of interrupting parental custody and possibly being
> accused of infringing a parent's constitutional rights, or not
> removing a child and possibly infringing the child's rights.
>      To balance these concerns, courts give caseworkers
> 'unusual deference' and impose few concrete restrictions on their
> exercise of discretion.

*Emerson*, 740 F. Supp.2d at 391 (citing *Kia P. v. McIntyre*, 235 F.3d 749, 758 (2d Cir. 2000);

*Wilkinson*, 182 F.3d at 104).  "In the context of child abuse or neglect proceedings, the Second

Circuit has applied a deferential standard, emphasizing that 'courts must apply the 'reasonable

basis' test to permit investigators considerable discretion in the abuse context." *Shapiro*, 2004

WL 269889, at *19 (quoting *Wilkinson*, 182 F.3d at 106); *see also Tenenbaum*, 193 F.3d at 596

("It is precisely the function of qualified immunity to protect state officials in choosing between

such alternatives, provided that there is an objectively reasonable basis for their decision,

whichever way they make it."); *Walker II*, 621 F. App'x at 75-76 (reiterating deferential "reasonable basis" standard applicable to child protective services case workers). "Consequently, for an investigation to pass constitutional muster, a caseworker need only have a 'reasonable basis for [his] finding of abuse . . . consistent with some significant portion of the evidence before [him].'" *Emerson*, 740 F. Supp.2d at 391 (quoting *Wilkinson*, 182 F.3d at 104 (quotation marks omitted))(bracketed material added). "At the same time, case workers are not 'free to substantiate a claim of abuse . . . by ignoring overwhelming exculpatory information or by manufacturing false evidence.'" *Walker II*, 621 F. App'x at 76 (quoting *Wilkinson*, 182 F.3d at 104).

Relevant to the instant issue, the crux of the Plaintiffs' opposition to granting CPS workers Encarnacion, Peterson and Pidel qualified immunity is that those workers relied upon alleged false and misleading information, which was provided to them by certain Northwell Defendants, in particular Hoffman-Rosenfeld, who supposedly exploited those workers' alleged incompetence. (*See* Opp'n at 15; *see also id.* at 19.) Plaintiffs have no evidence that Encarnacion, Peterson or Pidel took any action in furtherance of the Protective Proceedings after the Petitions were filed in Family Court. (*See* County's Rule 56.1 Statement, ¶19; *cf.*, Plaintiffs' Rule 56.1 Statement, *in toto*.) Further, while "[t]his Court is certainly conscious that qualified immunity is improper in light of credible evidence of material perjury or fabricated evidence" *Walker I*, 63 F. Supp.3d at 313 (collecting cases), no such evidence has been presented. Moreover, the traditional deference non-doctors afford doctors in complicated medical matters, such as was presented to Encarnacion, Peterson, and Pidel in investigating Lana's case, was objectively reasonable and the reliance thereupon by Encarnacion, Peterson, and Pidel passes the applicable deferential 'reasonable basis' standard courts employ. *See V.S. v. Muhammad*, 595

F.3d at 431 (finding it reasonable to rely upon a doctor's diagnosis of child abuse in commencing child protective proceedings and wholly unreasonable that, before such reliance is placed, caseworkers should first assess the reliability of a such doctor's past and present diagnoses, especially when the doctor is otherwise qualified); *see also supra* at Part III(B)(7)(b) (discussing, *inter alia*, *V.S. v. Muhammad* and qualified immunity); *Southerland*, 680 F.2d at 152 ("An investigation passes constitutional muster provided simply that case workers have a 'reasonable basis' for their findings of abuse." (quotation omitted)); *Wilkinson*, 182 F.3d at 108 (concluding that the "reasonable basis test" requires that caseworkers' decisions to substantiate an allegation of child abuse "be consistent with some significant portion of the evidence before the"); *see e.g., Walker I*, 63 F. Supp.3d at *316* (finding it objectively reasonable for a caseworker who was not a physician, to subsequently re-evaluate whether marks on child's body were evidence of abuse after additional events developed in the state protective action). Hence, on the record presented, the investigation of CPS workers Encarnacion, Peterson, and Pidel passes constitutional muster as they had a reasonable basis to suspect child abuse and neglect, thereby entitling them to qualified immunity from Plaintiffs' § 1983 claims.

### 8. Plaintiffs' *Monell* Claims

It is undisputed that "Plaintiffs have no evidence that a custom or policy of Defendant County of Suffolk caused a violation of their constitutional rights." (County's Rule 56.1 Statement, ¶21; *cf.*, Plaintiffs' Rule 56.1 Statement, *in toto*.) Given this absence, the Plaintiffs cannot establish a violation of their constitutional rights pursuant to a custom or policy; therefore, as a matter of law, their *Monell* claim fails. *See, e.g., Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013)("Establishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in

addition, that their commission of the tort resulted from a custom or policy of the municipality." (citations omitted)).

### 9. Plaintiffs' Pendant State Law Claims

Regarding their pendant state law causes of action against the County Defendants, by failing to address those claims in their Opposition, Plaintiffs are deemed to have waived them. (*See supra* at Part III(B)(4) (discussing waiver of claim when plaintiff fails to argue in support of such claim, and collecting cases).)

Even if that were not so, Plaintiffs have not presented any evidence to dispute the County Defendants' claim that Mother and Father failed to appear for their respective §50-h hearings. *See, e.g., Duncan v. City of N.Y.*, Nos. 11-cv-3901, 12-cv-1565, 2017 WL 3105856, at *5 (E.D.N.Y. July 21, 2017) (instructing that only basis for excusing compliance with §50-h requirement is exceptional circumstance)(collecting cases). Nor do they dispute that Mother's and Father's failures to appear at those hearings precludes Plaintiffs from proceeding with their pendent state law claims. *See Przybyla v. County of Suffolk*, No. 09-cv-5129, 2017 WL 1274051, at *2 (E.D.N.Y. Mar. 3, 2017)("A party who has failed to comply with a demand for examination pursuant to General Municipal Law § 50-h is precluded from commencing an action against a municipality." (quoting *Bernoudy v. County of Westchester*, 40 A.D.3d 896, 897 (2d Dep't 2007)). Accordingly, as a matter of law, the County Defendants are entitled to summary judgment in their favor as to the Plaintiffs' pendent state law claims.

As a further alternative basis for granting summary judgment in the County Defendants' favor as to the Plaintiffs' state-law claims: "New York law provides absolute immunity for state and local employees when they perform discretionary, as opposed to ministerial, functions[,] . . . [which] protection extends to the state itself as well as its subdivisions." *Tenenbaum*, 193 F.3d

at 606 (citing *Tango v. Tulevech*, 61 N.Y.2d 34, 40 (1983); *Arteaga v. State*, 72 N.Y.2d 212, 216 (1988)). "'[D]iscretionary acts a[re] those which 'involve the exercise of reasoned judgment which could typically produce different acceptable results.'" *Tenenbaum v. Williams*, 862 F. Supp. 962, 981 (E.D.N.Y. 1994)(quoting *Tango*, 61 N.Y.2d at 41), *aff'd in part, vacated in part*, 193 F.3d 581 (2d Cir. 1999). Based on the present record, there is not dispute that the CPS workers were performing discretionary acts in commencing the Protective Proceedings; therefore, the County Defendants would be absolutely immune to liability on Plaintiffs' state-law claims of malicious prosecution and abuse of process which arise out of those acts. *See V.S. v. Muhammad,* 595 F.3d at 432 (holding child protective services caseworkers entitled to absolute immunity for claims of malicious prosecution and abuse of process under New York State law); *see also Tenenbaum*, 193 F.3d at 606 (affirming district court's finding that Child Welfare Association workers' actions of removing child from school and having her medically examined for signs of sexual abuse were discretionary, entitling workers to absolute immunity from plaintiffs' state-law claims arising from those actions).

* * *

In sum, despite their bald contention that "based upon the allegations appearing in the Complaint and what has been proven at discovery, the County's motion must be denied" (Opp'n at 19), on the record presented, there is an absence of admissible evidence supporting the finding of material disputed facts that would preclude the granting of the County Defendants' Summary Judgment Motion. The Court has considered the Plaintiffs' remaining arguments and finds them to be without merit.

IV.     Conclusion

Accordingly, after drawing all inferences and resolving all ambiguities in favor of the Plaintiffs, but finding that no rational jury could find in their favor on their causes of action against the County Defendants, IT IS HEREBY ORDERED that the County Defendants' Summary Judgment Motion is GRANTED in its entirety; the Clerk of Court is directed to enter judgment in favor of the County Defendants.

The July 31, 2019 Pretrial Conference is marked off the Court's calendar.


SO ORDERED this 29th day of July 2019 at Central Islip, New York.

                                        /s/  *Sandra J. Feuerstein*
                                        Sandra J. Feuerstein
                                        United States District Judge